## Lewis v. Commissioners.

1. The act of Kansas approved March 2, 1872 (Laws of Kansas, 1872, p. 110), does not require that the bonds issued pursuant to its provisions by a county in aid of works of internal improvement shall in all cases be deposited with the treasurer of state before they are delivered to the auditor of state for registration and for his certificate thereon, required by the fourteenth section. *Infra*, p. 742.

2. That certificate, as between the *bona fide* holder for value and the county, is conclusive that the bonds, which by their terms purport to be issued under that act, and which absolutely and unconditionally covenant to pay a certain sum of money at a time and place therein named, are negotiable as the valid obligations of the county.

Error to the Circuit Court of the United States for the District of Kansas.

This case depends upon the construction of an act of the legislature of Kansas, approved March 2, 1872. Laws of Kansas, 1872, p. 110.

The first section provides that the board of county commissioners of any county, the mayor and common council of any incorporated city, and the trustee, clerk, and treasurer of any municipal township in the State, may issue the bonds of such county, city, or township, in any sum necessary, not greater than ten per cent, inclusive of all other bonded indebtedness, of the taxable property of such county, city, or township, for the purpose of building bridges, free or otherwise, or to aid in the construction of railroads or water-power, by donation thereto, or the taking of stock therein, or for other works of internal improvement. It also declares that all counties may, in addition to the amount therein authorized, issue bonds not exceeding $100,000.

The second section provides that the bonds so issued shall be payable at such place in the city of New York as the officers issuing the same may direct, in not less than five nor more than thirty years from the date thereof, with interest not to exceed ten per cent per annum, "all in the discretion of the officers issuing the same," the interest to be payable semi-annually, and evidenced by coupons attached, — such bonds, if issued by a county, to be signed by the chairman of the board of county commissioners, and attested by the county clerk.

The third section declares that, before any bonds are issued, the same shall be ordered by a vote of the qualified electors of the municipality.

The eighth section provides, among other things, that if the proposition voted for be to aid in the construction of a railroad (either by donation thereto or the taking of stock therein), or other work of internal improvement, that the proper officers of the municipality shall at once subscribe upon the books of the railroad company, "specifically setting forth the conditions upon which such subscription is made, the amount of such donation thereto, stock taken therein, or bonds voted therefor."

The eleventh section, upon the construction of which the case turned in the court below, is in these words: —

"That if the proposition for which bonds were voted be to aid in the construction of a railroad, or any bridge, or other work of internal improvement, either by donation thereto or the taking of stock therein, then, upon the subscription being made, as hereinbefore provided, the officers of such county, city, or township [shall thereupon issue the bonds of such county, city, or township] for the amount of such subscription, and shall forthwith deliver the same, together with the original or a copy of the subscription, setting forth its terms in full, to the treasurer of state, which said bonds shall be held by the said treasurer of state, in escrow, until the conditions in the terms of the said subscription to such railroad or other work of internal improvement shall be in all things fully complied with; that upon the conditions of said subscription being in all things fully complied with, then the treasurer of state shall deliver such bonds to the parties entitled thereto, who shall have the same registered as hereinafter provided : *Provided*, that such bonds shall not bear interest or be negotiable until after the delivery and registration thereof: *And provided further*, that in case of a failure to comply with the conditions in the terms of such subscription, then such bonds shall be by the treasurer of state cancelled, and redelivered to the county, city, or township issuing the bonds : *And provided further*, that this section shall not apply where the people may have named some party as trustee in their vote on the proposition, and the contractor may thereafter agree to the same."

The twelfth section makes it the duty of the municipality issuing the bonds to register the same in a book kept for that purpose, showing the date, amount, maturity, and rate of interest, and, if to aid in the construction of a railroad or other work of internal improvement, of what railroad or other work of internal improvement, and whether the same be a donation or for stock therein ; and at the same time transmit to the auditor of state a certified statement, attested by the clerk, under the corporate seal of the municipality, of the number, amount, character of the bonds, to whom, and for what purpose, issued.

The thirteenth section declares it to be the duty of the clerk of each county, city, or township in the State, within sixty days after the act took effect, and thereafter on the first day of January and July of each year, and at such other times as the auditor may request, to transmit to that officer a certified, full,

and complete statement of the bonded indebtedness of every description of said municipality, particularly setting forth the nature of such bonds, and for what they were issued. From such statement the auditor is required to make a faithful record of the bonded indebtedness of the several counties, cities, and townships of the State, noting therein all bonds subsequently issued, paid, or cancelled, as the same may be reported to him.

The fourteenth section has an important bearing upon the case, and is in these words : —

" Within thirty days after the delivery of such bonds, the holder thereof shall present the same to the auditor of state for registration, and the auditor shall, upon being satisfied that such bonds have been issued according to the provisions of this act, and that the signatures thereto of the officers signing the same are genuine, register the same in his office, in a book to be kept for that purpose, in the same manner that such bonds are registered by the officers issuing the same, and shall, under his seal of office, certify upon such bonds the fact that they have been regularly and legally issued, that the signatures thereto are genuine, and that such bonds have been registered in his office according to law, for which registration and certificate the auditor shall be entitled to a fee of one dollar for each bond so registered, to be paid by the holder thereof."

The remaining sections, among some things of an unimportant character, provide that the auditor shall annually ascertain the amount accrued and to accrue before the tax of the succeeding year shall be levied and collected (for the final redemption of the same), upon all bonds registered in his office, and certify the amount thereof to the clerk of the county in which the bonds are issued ; that the clerk of the county shall thereupon proceed to ascertain the amount of tax necessary to pay the interest and create a sinking fund, in compliance with the auditor's certificate ; that the county treasurer shall, at the time of his annual settlements with the State treasurer, pay over to the latter moneys collected under the act, take duplicate receipts therefor, one copy of which shall be filed with the auditor of state ; that the State treasurer, out of the moneys so received, shall pay off the interest accrued upon such registered bonds, taking up the interest coupons, which shall be cancelled

and filed with the auditor of state; that the moneys thus collected and remaining in the hands of the State treasurer, after the payment of the interest accrued, except that accruing for the current year, shall be retained as a sinking fund for the final redemption of the bonds; that when any registered bonds mature, the same shall be paid by the State treasurer out of any money in his hands for that purpose, and, when paid, cancelled and filed with the auditor, who shall enter satisfaction in the record of registration; that the treasurer and auditor of state shall annually publish a detailed statement of the business transacted by them under the act during the preceding year; and that the State shall be deemed the custodian only of the taxes so collected, and credited to such municipality, in no manner liable on account of such bond; but the tax and funds so collected to be deemed pledged and appropriated to the payment of the interest and principal of the registered bonds until fully satisfied, the State treasurer to be liable on his official bond for the faithful disbursement of all moneys so collected or received by him.

The case was, by stipulation of the parties, submitted for trial to the court. There was a finding for the defendants. Judgment having been entered thereon, Lewis brought this writ of error.

Submitted on printed arguments by *Mr. James Grant* for the plaintiff in error, and by *Mr. Edward Stillings, Mr. Thomas P. Fenlon,* and *Mr. A. M. F. Randolph* for the defendants in error.

MR. JUSTICE HARLAN, after stating the facts, delivered the opinion of the court.

At an election held on the 27th of August, 1873, in the county of Barbour, State of Kansas, the qualified voters gave their sanction to a donation of $100,000 in bonds of the county, to aid in the construction of the Nebraska, Kansas, and Southwestern Railroad. By the terms of the proposition voted on, the bonds were to be placed in the hands of the State treasurer, who was to deliver to the railroad company one-half of them when the proposed road should be constructed to Medicine Lodge, and the remainder of them when

it should be completed through the county. A few days after the election, they were signed, sealed, and attested by the proper officers of the county, in conformity with the order of the board of commissioners. They are dated Sept. 1, 1873, and payable to the railroad company, or bearer, with interest, semi-annually, at the rate of ten per cent per annum, payable at the National Park Bank in the city of New York. Each is signed by the chairman of the board of county commissioners, is attested by the county clerk, and purports, upon its face, to be " one of a series of one hundred bonds of one thousand dollars each, all of like tenor and date, . . . issued for the purpose of aiding in the construction of the Nebraska, Kansas, and Southwestern Railroad, through said Barbour County, in the State of Kansas, under and in pursuance of an act of the legislature of the State of Kansas, entitled ' An Act to authorize counties, incorporated cities, and municipal townships to issue bonds for the purpose of building bridges, aiding in the construction of railroads, water-power, or other works of internal improvements, and providing for the registration of such bonds, the registration of other bonds, and the repealing of all laws in conflict therewith,' approved March 2, 1872."

There is nothing upon the face of the bonds indicating that the donation was otherwise than absolute and unconditional.

They were left by the county officers with one Hutchinson, to be deposited with the treasurer of state, as required by the terms of the proposition upon which the people had voted. But they were never so deposited, and by Hutchinson were procured to be registered by the auditor of state, and then fraudulently put in circulation.

An indorsement was made upon each bond as follows : —

" STATE OF KANSAS, *ss* :

" I, D. W. Wilder, auditor of the State of Kansas, do hereby certify that this bond has been regularly and legally issued; that the signatures thereto are genuine, and that the same has been duly registered in my office according to law.

" In witness whereof I have hereunto set my hand and affixed my seal of office, at Topeka, this nineteenth day of November, 1873.

                           " D. W. WILDER, *Auditor.*"

Lewis purchased the bonds and coupons before the maturity of any of the coupons, and (according to our interpretation of the facts specifically found) without notice of any fraud in their execution or issue, unless, as claimed by the county commissioners, such notice was furnished by the terms of the act above mentioned. He brought the present action against the board of commissioners of the county, to recover the coupons due Sept. 1, 1875, March 1, 1876, and Sept. 1, 1876. The defence, which was sustained in the court below, is placed upon the ground that the bonds were issued in plain violation of that act, and that all persons, whether purchasers in good faith or not, were required to take notice of the fact that they were not binding obligations of the county.

We have carefully considered the reasons upon which the judge of the Circuit Court based the conclusion that the county was not liable upon the bonds even in the hands of a *bona fide* purchaser for value. His opinion seems to proceed upon these grounds: That under the act of 1872 it was a condition precedent that the bonds should not bear interest nor be negotiable until they should pass through the hands of the State treasurer, he alone being invested with authority to determine when they were to be delivered to the parties entitled thereto, for the purposes of registration; that the requirement of that condition was manifest from the statute, of the terms of which all were bound to take notice; that although the bonds, on their face, disclosed no conditions whatever for their delivery, the purchaser should have ascertained whether, prior to their registration, they had, in the first instance, been deposited with that officer as escrows, and that he could not take the certificate of the auditor as conclusive evidence that the statute had been pursued; that as the bonds were not placed in the hands of the treasurer, they never had the quality of negotiability, and could not, therefore, have been rightfully registered, nor their regularity and legality certified by the auditor under his seal of office; and since the conditions affixed by the popular vote had never been performed by the construction of the proposed road, the bonds were not the valid obligations of the county.

We are unable to concur in some of the views expressed by

the learned judge, especially in his conclusion that the bonds are not enforceable 'against the county. The fundamental proposition upon which that conclusion seems to rest is, that bonds executed under the act of 1872 could not, consistently with its purpose and language, be registered and issued, even when the subscription was payable immediately and without conditions, unless, in the first instance, they be delivered to the treasurer of state, and be by him delivered to the party entitled thereto. This interpretation is not, we think, justified by any fair construction of the act. Under some circumstances, distinctly disclosed upon its face, it is not at all necessary that they be delivered to the treasurer in order that they may be registered and become the valid obligations of the municipality, in whose name they are issued. The last proviso of the eleventh section expressly declares that that section — the only one which refers to the custody of the bonds by the State treasurer — " shall not apply when the people have named some party as trustee in their vote upon the proposition, and the contractor [that is, as we suppose, the railroad company proposing to do the work of construction] may thereafter agree to the same." If the people on one side, and the company on the other, agree upon a trustee to hold the bonds until certain contingencies happen, or certain terms or conditions are performed, the statute explicitly declares the eleventh section shall not apply. Again, suppose the people had voted — as, it would seem, that under sects. 1, 2, and 3, they might have done — for a donation, or a subscription of stock, to be paid in bonds deliverable at once, without any conditions or terms whatever. Could it be claimed that the bonds must, of necessity, have been delivered to the treasurer of state? If so, for what purpose could he have received them? What ends could have been subserved by his custody of them, when to their delivery no conditions were attached? When should he, in such case, have delivered them to the parties entitled thereto? If, in the case supposed, the company, under the agreement with the county, and under the vote of the people, became entitled, at once, to the bonds for the purpose of having them registered, and the required certificate of the auditor indorsed thereon, it cannot be that the legislature intended the parties to perform

the idle ceremony of passing them through the hands of the treasurer, to be by him immediately surrendered to the proper parties.   That officer, in the case put, has no duty to perform, such as the act imposes when conditions are attached to a subscription.   For these reasons we are of opinion that the eleventh section, in so far as it requires a delivery of bonds to him, has no application except in cases where, to the subscription of stock, or to the donation, are annexed conditions to be complied with before that officer may rightfully surrender the bonds intrusted to him.   The object of that section is to prescribe a mode in which the people of a county may, if they pursue the statute, be protected, in some degree, against a premature delivery of county bonds by local officers in advance of the performance of conditions imposed by the popular vote.

If we are correct in this view, it follows that the purchaser of these bonds was not informed, by the statute, that they belonged to that class which were imperatively required to be deposited, in the first instance, with the State treasurer, and by him held until the conditions upon which they were to be delivered were fully performed.

But it remains for us to consider the important practical question as to the rights of the parties, in view of the admitted fact, that the proposition approved by popular vote did, in terms, provide for the ultimate delivery of the bonds only upon certain conditions, — bonds, therefore, which ought to have been, but were not, delivered by the county officers to the State treasurer, to be held until the prescribed conditions were performed.   The determination of this question, so far as it involves the good faith and diligence of the parties, is somewhat complicated by the absence of any finding as to whether the subscription was, in fact, made on the books of the company, "specifically setting forth the conditions" upon which it was made (sect. 9) ; or whether the original or a copy of the subscription was, in fact, delivered or even transmitted to the treasurer of state (sect. 11) ; or whether the officers of the county themselves made a record of the bonds in a book kept for that purpose (sect. 12) ; or whether they transmitted to the State auditor a certified statement, attested by the county clerk, " of

the number, amount, and character of the bonds so issued, to whom issued, and for what purpose " (sect. 12). We cannot, therefore, certainly know what facts would have been ascertained by the purchaser had he resorted to all those sources of information, — an investigation upon which, for reasons hereafter to be stated, he was not required to enter. We have in the special finding only the fact that the county, under the order of the board of commissioners, executed bonds payable to the railroad company or bearer, and purporting to have been issued under and in pusuance of the act of 1872; and that the bonds were left by the county officers with Hutchinson for delivery to the State treasurer, when the statute required the county authorities themselves to deliver the bonds to that officer.

Now, it is to be observed that the bonds do not, upon their face, indicate that they were deliverable upon the performance of certain conditions. They are made payable, unconditionally, to bearer, at a designated place and at a specified time. By the act of the county officers, intrusting the bonds to one upon whom no official responsibility rested, he was enabled to represent himself to the auditor as presumptively the owner, because the bearer, of the bonds. But these facts, it is insisted, are of no consequence in view of the statutory provision, declaring, in effect, that bonds, of the kind here in suit, " shall not bear interest or be negotiable " until after their delivery by the State treasurer to the parties entitled thereto. Whatever force might be conceded to this argument, looking alone to the requirements of the eleventh section of the act, we are of opinion that more consequence is to be attached to the action of the auditor of state, under the fourteenth section, than seems to have been done by the court below. The presumption is that the legislature, while aiming to guard local communities against the fraudulent conduct of their officers, did not intend to withdraw all protection to the *bona fide* purchasers of municipal securities which those officers were authorized to execute, and which they might put into circulation, or negligently permit to get into circulation. Hence, as we think, the requirement as to the registration of bonds issued under the act, and the duty of the State auditor, upon registration, to attest their regularity and legality by a certificate, und r his seal of office.

The State treasurer may improperly surrender bonds deposited with him for delivery only upon the performance of specified conditions. But such delivery would not render them binding upon the municipality, in whose name they are executed. The holder is under a necessity, by the statute, to do something more. He is required to present them for registration to another officer, the auditor of the State, in whose office (if the county authorities obey the statute) is kept a record of the number, amount, and character of the bonds, to whom issued, and for what purpose. And that officer is not under a duty to admit the bonds to registration, simply because asked to do so, and without making inquiry as to their regularity and legality. Unless satisfied that they are issued in accordance with the provisions of the act, he is bound to deny the application for registration. But, if satisfied that the provisions of the State have been pursued, he is required to register the bonds, and certify, upon each one, under his seal of office, that it has been regularly and legally issued. To him, therefore, is committed, by the State, the important function of finally determining whether the law has been, in all respects, obeyed, and, consequently, whether the bonds have been regularly and legally issued. His determination, necessarily, involves an investigation as to every fact essential to their validity. Purchasers in good faith, although required to know what the statute contains, are not bound, under such circumstances as are here disclosed, to go behind the auditor's certificate, and find out whether he has ascertained all the facts, or whether he has correctly and honestly passed upon the questions arising upon an application for registration. The investigation which the statute authorized him to make involved the inquiry whether the bonds were of the class which should have passed through the hands of the treasurer, and, also, whether the conditions, upon which they were deliverable, had been performed. Purchasers have the right to assume — having no notice to the contrary — that he has, in these respects, discharged his duty. The registration acts, in some of the States, while imposing like duties upon State auditors, and requiring them (when the facts justified them in so doing) to certify, upon municipal bonds, that they have

been issued in compliance with law, expressly declare such certificates to be *prima facie* evidence only of the facts stated, and shall not prevent proof to the contrary in any suit involving the validity of the bonds, or the power and authority of the municipality, in whose name they are executed, to issue them. *Anthony* v. *County of Jasper*, 101 U. S. 693. But the statute in question contains no such provision. The legislature of Kansas confers upon the auditor of state full authority to ascertain and determine whether bonds presented for registration have been issued in accordance with the statute, and, if satisfied such is the fact, it is made his duty to certify upon the bonds that they have been regularly and legally issued. Had it appeared upon the face of these bonds that they were deliverable upon certain terms, and, therefore, belonged to the class which should pass through the hands of the State treasurer, and if the purchaser, in such a case, be held to have taken the bonds subject to the statutory requirement that they were not negotiable unless they had been, in the first instance, actually delivered by or in behalf of the county officers to the State treasurer, and by the latter surrendered to the proper parties, it is clear no such condition can be attached to the purchase by appellant. For the bonds here in suit do not disclose the conditional nature of the subscription, nor that they belonged to the class which, as a condition precedent to their negotiability, must have been delivered to the State treasurer. That these facts are not disclosed upon the face of the bonds is the fault of the county, and it is estopped, as against a *bona fide* purchaser, to deny that they are of the class which might have been delivered, at once, and without going through the hands of the State treasurer, to the auditor of state, and been registered and certified as regularly and legally issued. In such a case, at least, the action and certificate of the auditor of state must be deemed conclusive evidence, as between the county and a *bona fide* purchaser, that the bonds were regularly and legally issued, and, therefore, negotiable, in the fullest sense of that word. If such be not the construction of the registration act, it is difficult to perceive of what practical value is the auditor's certificate, or what the legislature intended by the requirement that he should, after

examination into the facts, attest the regularity and legality of the bonds. If the determination of that officer, in this case, operates hardly upon the people of the county, the result must be attributed to the legislation in question as well as to the negligence of the State and county officers. What we have said is in harmony with the settled doctrines of this court upon the subject of negotiable securities issued by municipal corporations, as announced in numerous cases with which the profession is familiar, and which need not be here cited.

There are other questions in the case. But they are of minor importance, and it seems to be unnecessary to consider them.

*Judgment reversed, and cause remanded with directions to enter a judgment in favor of the plaintiff below.*