### D'ESTERRE v. CITY OF BROOKLYN et al.

(Circuit Court, E. D. New York. November 26, 1898.)

1. **MUNICIPAL BONDS—POWER TO MAKE NEGOTIABLE.**
   Negotiability is a usual and valuable feature of municipal bonds, and a statute authorizing the issuance of bonds by municipalities will be construed as giving power to make them negotiable, in the absence of provisions clearly showing a contrary intention.

2. **SAME—EFFECT OF RECITAL IN BONDS.**
   A recital in a municipal bond that it is issued in pursuance of a statute referred to is conclusive against the municipality only as to matters of fact, and does not estop it from denying the power of its officers to issue such a bond under the statute.

3. **SAME—CONSTRUCTION OF STATUTE—REGISTERED BONDS.**
   The New York statute of 1892, as amended in 1893, provides for the issuance by municipalities of either coupon or registered bonds, giving the forms and requisites of each; among other things specifying that in the case of registered bonds having no coupons "the bond shall also be made payable to the person to whom it is issued, instead of to bearer." Laws 1893, c. 171, § 8. It contains no provision that such bonds may not be made payable to the order of the person to whom they are issued, but provides that "the bonds, as they may be sold by the payees, may, on the dates thereof, be registered in the name of the new purchasers." Id. *Held*, that it was not intended that registered bonds should not be negotiable, and that upon their subsequent transfer, which was evidently contemplated by the law, they should remain subject, in the hands of a bona fide purchaser, to equities existing against the original payees.

4. **SAME—TRANSFER—DEFENSES AGAINST FORMER HOLDER.**
   Such bonds being negotiable when issued in strict conformity to the statute. the fact that bonds are issued thereunder by a town with the place for the name of the payee left blank, where in all other respects they comply with the requirements of the law, and contain a certificate of their registry, does not charge a subsequent purchaser with notice of defenses existing against them in the hands of the person to whom they were issued. Such an omission is merely an irregularity, which would at most only put the purchaser on inquiry as to whether they had in fact been issued to the person through whom he acquired them.

5. **SAME—EFFECT OF REGISTRY.**
   The registration of municipal bonds does not deprive them of their negotiable quality, when voluntarily transferred by their owner.

6. **SAME—EFFECT OF CERTIFICATE OF REGISTRATION.**
   An indorsement on a municipal bond, when it is issued, that it is registered, though not signed by the officers of the municipality, is a part of the bond, and, in connection with a recital that the bond is issued in pursuance of a statute which requires its registration, estops the municipality from denying its registration.

7. SAME—BONA FIDE PURCHASER—HOLDER AS COLLATERAL SECURITY.

  One who receives municipal bonds, before their maturity, as collateral security for an antecedent debt, and surrenders other collateral therefor, is a bona fide purchaser.

This is a suit by James C. E. D'Esterre against the city of Brooklyn and George W. Palmer, as comptroller of the city of Brooklyn, to establish the validity and compel the registration of bonds issued by the town of Gravesend before its annexation to the city of Brooklyn.

Henry B. B. Stapler and Frank Hiscock, for complainant.
John Whalen, Corp. Counsel, and Wm. J. Carr, for defendants.

THOMAS, District Judge. In 1894 the state of New York annexed to the city of Brooklyn the territory of the town of Gravesend, and provided for the continued obligation of such town for its existing debts, and the payment thereof, by taxation at the instance of the city of Brooklyn, which, by the Laws of 1897, became consolidated with the city of New York. During its independent existence, and in January, 1894, the town of Gravesend, through its authorized and qualified officers, issued bonds to the amount of $148,000 for the purpose of raising funds to pay certain local improvement bonds maturing during that year. On January 18, 1894, these bonds were delivered by the supervisor of the town to the firm of Coffin & Stanton, brokers, doing business in the city of New York, and on the succeeding 2d day of February Coffin & Stanton pledged $24,000 of such bonds to the complainant to secure an antecedent debt of $23,040, in consideration whereof the complainant surrendered to Coffin & Stanton certain other bonds, of the value of $24,000. The complainant, at the time of such substitution of securities, had no notice or knowledge of any defect in the bonds or the proceedings for the issuing thereof, save such notice or knowledge, actual or constructive, as he received from an inspection of the bonds themselves, and from the enabling statute, which was passed in 1892, and amended in 1893. This suit is to establish the validity of such bonds, to compel the registration thereof, and to recover the interest accrued due thereon. It is urged by the defendants that the complainant should be denied such relief, upon the ground that he is not such a bona fide holder thereof as to preclude such defenses as were open to the town against Coffin & Stanton. That firm did not have complete title, and could not have recovered upon the bonds, for the sufficient reason that, in violation of the statute, they bought them on credit, and never paid any part of the purchase price,—at least beyond the sum of $10,000. There is no other defect in the proceedings for issuing the bonds, or in their form, that invalidated them in the hands of Coffin & Stanton. The inquiry, then, is, can the defense of nonpayment by Coffin & Stanton be maintained against the complainant? The answer involves two inquiries, viz.: (1) Did the statute authorize the issue of the bonds in a negotiable form? (2) If so, was the plaintiff a bona fide purchaser? The act prescribes a form of coupon bond containing this provision: "This bond shall be registered as to the principal sum herein provided to be paid." Laws 1893, c. 171, § 8. Following this statutory form of a coupon bond was this:

"In the case of registered bonds the language in the bond at the heading shall be registered instead of coupon, and the provision as to the surrendering of interest coupons shall be omitted. The bond shall also be made payable to the person to whom it is issued instead of to bearer. A certificate showing the registration of the bond shall be endorsed thereon. The bonds as they may be sold by the payees may on the dates thereof be registered in the name of the new purchasers, the new name in each case to be shown in the certificate of the registry."

The words "registered bonds," as above used, refer to certain classes of bonds for which provision is made earlier in the act, where the language is, "They [the bonds] may be either coupon or registered bonds, or coupon bonds registered as to the principal only." From these provisions it was contemplated, seemingly, that the bonds might be (1) coupon bonds, or coupon bonds registered as to principal only; (2) registered bonds, without coupons. The bonds in question were without coupons, and hence fell under the class designated as "registered bonds." On its face each bond is described as "Local Improvement Loan Registered Bond," and a certificate of registration is indorsed thereon. Thus it appears that by certain words of the statute a coupon bond, registered or otherwise, shall be payable to bearer, while a registered bond shall be "made payable to the person to whom it is issued instead of to bearer." Each of the bonds issued provides: "Know all men * * * that the town of Gravesend * * * acknowledges that it owes * * * the sum of one thousand dollars, * * * which sum the said town hereby engages and promises to pay, * * * with interest thereon," etc. Hence the bonds were registered bonds, with the payee's name omitted. Such bonds, in form, are equivalent to bonds payable to the holder as bearer, and he may fill up the blank with his own name, or make them payable to himself or bearer, or to order. White v. Railroad Co., 21 How. 575. See, also, Supervisors v. Galbraith, 99 U. S. 214. If there were no other defect in issuing the bonds save the omission of the payee's name, a court of equity could direct that the payee's name be inserted, and such omission itself would not invalidate bonds. But this is not the point under inquiry, but, rather, did the statute require that registered bonds should be payable to the person to whom they were issued, with the effect of depriving them of such negotiable quality as would protect a bona fide purchaser against prior equities? If Coffin & Stanton had paid for the bonds, there would have been no equity in favor of the town on account of the omission of the payee's name; but, as Coffin & Stanton did not so pay, then the bonds were not enforceable by them, nor by their transferee, unless they were negotiable. The Revised Statutes of New York (part 2, c. 4, tit. 2) provide:

"Section 1. All notes in writing, made and signed by any person, whereby he shall promise to pay to any other person or his order, or to the order of any other person, or unto the bearer, any sum of money therein mentioned, shall be due and payable as therein expressed; and shall have the same effect, and be negotiable in like manner as inland bills of exchange, according to the custom of merchants."

The law merchant regards instruments as negotiable, so as to be free from prior equities in the hands of bona fide purchasers, when the obligation is payable to bearer, or to a designated person or his order, and

exposes to the effect of such equities instruments payable to an individual. Evertson v. Bank, 66 N. Y. 14, 19; McClelland v. Railroad Co., 110 N. Y. 469, 475, 18 N. E. 237; Carnwright v. Gray, 127 N. Y. 92, 27 N. E. 835; School Dist. v. Hall, 113 U. S. 135, 139, 5 Sup. Ct. 371; Manufacturing Co. v. Bradley, 105 U. S. 175, 180; Norton, Bills & N. 13–16. See, also, Gerard v. La Coste, 1 Dall. 194; Barriere v. Nairac, 2 Dall. 249. It is true that the bonds in the case at bar are payable in blank, and hence payable to bearer; but the question is not whether the town officers have issued a negotiable instrument, but rather whether the statute directed that the instrument should be issued in a nonnegotiable form. The fact that the officers certified that the bonds were issued pursuant to the act can only estop the town touching matters of fact, and not as to the power of the officers to make the contract. Katzenberger v. Aberdeen, 121 U. S. 172, 176, 7 Sup. Ct. 947. The purchaser is presumed to have cognizance of the statute, and to know the powers conferred thereby on the officers of the town, and it is his duty to compare the instruments which he proposes to purchase with the statute. If, upon such comparison, he finds that the power exists, he is not required, unless there be something brought to his attention by the appearance of the instruments or extrinsically, to search with a view of ascertaining whether the town officers have performed each preliminary duty devolved upon them. Farmers' & Mechanics' Bank v. Butchers' & Drovers' Bank, 16 N. Y. 142; President, etc., v. Cornen, 37 N. Y. 320. Their recital of the performance of such duty is usually, as it is in this case, sufficient. The holding in Knox Co. v. Aspinwall, 21 How. 539, has been followed through a long line of cases, and in its essential holding is of undiminished authority. Cairo v. Zane, 149 U. S. 122, 13 Sup. Ct. 803. But if the enabling statute commands certain bonds to be made in a nonnegotiable form, then the purchaser is deemed to have knowledge of such provision, and to subject his rights to the effect of such statute. Commissioners v. Bolles, 94 U. S. 104; Marcy v. Oswego Tp., 92 U. S. 637; Commissioners v. Clark, 94 U. S. 278; Barnett v. Denison, 145 U. S. 135, 12 Sup. Ct. 819. If, then, in the case at bar, the statute, by directing that "the bond shall also be made payable to the person to whom it is issued, instead of to bearer," intended to direct the issue of the class of bond described as "registered bonds" only in a nonnegotiable form, the complainant must be presumed to have had knowledge thereof, and to have purchased the bonds in question knowing that they were subject to any defenses existing against Coffin & Stanton. The words above quoted, standing alone, and uninfluenced by any other provision of the statute, seem to point to such construction, but a more comprehensive consideration of the statute authorizes the conclusion that such is not its spirit and intention. It will be noticed that the statute prescribes that "registered bonds" shall not be made payable to bearer, but does not expressly prohibit a provision for payment to the order of the person to whom they are issued. Hence, if they may be made payable to the order of such person, or if it may be gathered that the statute intended that the bonds should be negotiable, the court may ascribe to them a negotiable quality. Norton, Bills & N. 13–16. It is permissible to consider in this connection that municipal bonds are usually negotiable.

An examination of the enabling statutes would illustrate that power to issue negotiable bonds is seldom, if ever, negatived. This condition exists for the very sufficient reason that such bonds are intended to pass by delivery or by indorsement, in order to give them marketable value. The bonds of a municipality, payable, as are these in question, after a long interval of time, would meet neither with ready sale, nor the most valuable return to the town, if they were subject to all the possible defenses to which nonnegotiable paper is exposed. The statute under consideration authorized a general issue of bonds, and, in the absence of restrictive words, the power would be implied to give them a negotiable form. People v. Mead, 24 N. Y. 114, 125. Moreover, the statute directed that all coupon bonds should be made payable to bearer, and it is not to be presumed that in respect to negotiability it intended to differentiate in the quality of classes of bonds issuable under the act. Indeed, the intention to give the registered bonds the form and attributes of commercial paper is to an extent inferable from the very words of the statute, which provide for their circulation. It enacts that "the bonds as they may be sold by the payees may on the dates thereof be registered in the names of the new purchasers, the new name in each case to be shown in the certificate of the registry." The word "payees" has a significance that to some extent indicates the legislative intention. It would seem that from the use of the word "payees" the legislature did not intend to limit the power to the mere issue of an ordinary nonnegotiable bond, in which case the term "obligee" would have been used more suitably. It is true that the person to whom the promise of payment is made in a nonnegotiable note may be properly described as a "payee," but such a word, when used in connection with an issue of municipal bonds, which are universally negotiable, would tend to show that negotiable bonds were intended. But can it be seriously urged that the legislature did not intend that these instruments should possess the same power to circulate that belongs to negotiable registered bonds? The statute certainly contemplated transfers of the bonds by the payees, and gave the purchasers the right "on the dates thereof" to have their names registered. What is the meaning of this provision? Is it that the bonds should be sold, and the right of registration exercised, provided the town had no defenses to the bonds? Would any intelligent person, any person not the dupe of the statute, purchase them under such conditions? Does the statute hold out a right of sale and promise of registration, and cunningly reserve the right to forfeit the bonds against all subsequent purchasers, by reason of some concealed extrinsic fact attributable to the misconduct of the officers of the town? This court will not assist in the municipal dishonor that attends repudiation by ascribing such intention to the legislature. The facts that statutes of this kind intend that municipal bonds shall be negotiable; that this statute, unlimited by positive legislation, would authorize negotiable instruments; that it prescribes that coupon bonds should be negotiable; that it does not command that a "registered bond" should not be payable to the order of the person to whom it was issued; that it characterizes the first purchasers as "payees," and contemplates sale of the bonds, and unqualifiedly endows the purchasers from such payees with the right "on the date of sale" to register the bonds,—

furnish strong evidence that it did not intend to deprive such "registered bonds" of the attributes of commercial paper beyond the limit that usually accompanies registered bonds. It should be kept in mind, in determining this question, that a power to issue municipal bonds, unless restricted, authorizes the issue of bonds in a negotiable form, and the modern necessity and practice of issuing bonds in such form require the interpretation of the enabling act favorably to the power so to do, unless the language of the statutes clearly prohibits the same. And it must also be considered that, if a municipality could, under any circumstances, issue negotiable instruments, a bona fide purchaser may presume that they were duly issued. San Antonio v. Mehaffy, 96 U. S. 312. But how far does registration limit negotiability? Registered bonds are not deprived wholly of their negotiable character by registration. Indeed, registration is principally desirable because the bonds are negotiable. A negotiable instrument is, by registration, to an extent deprived of its negotiable quality; but this disability is removable by the voluntary transfer by the owner of the instrument to another. Thereupon the town must, upon application, register it in the name of the new holder. The registration of such an instrument does not have the effect of subjecting it to any defenses existing against the persons in whose name it is first registered. Such is not at all the purpose of registration. It is now a usual custom to register municipal bonds, but it is a proposition as startling as it is untenable that bonds thereby lose their capacity to be negotiated by the owner, so as to pass by his authorization into the hands of subsequent holders, relieved from prior equities. Negotiability may be suspended pending a transfer by the owner. The New York statute (Laws 1870, c. 438) provides that an owner may render bonds nonnegotiable by certain indorsements thereon, and they remain nonnegotiable, except by the owner's indorsement. A provision for registration has the same, and no greater, effect. The New York statute (Laws 1869, c. 907, § 8) permits the registration of bonds issued by towns in aid of railways. Bonds so registered do not become nonnegotiable. In Lewis v. Commissioners, 105 U. S. 739, Cairo v. Zane, 149 U. S. 122, 13 Sup. Ct. 803, Commissioners v. Rose, 140 U. S. 71, 11 Sup. Ct. 710, and numerous other cases, the argument employed to sustain the bonds was to the effect that they were apparently registered, and that this was sufficient evidence thereof in behalf of a bona fide purchaser. The conclusion is reached that the statute intended that the registered bonds should be negotiable securities, and that the complainant purchased them for such consideration that he was a bona fide holder, unless the blank in the bonds gave him notice of some irregularity in their issue, because the name of the person to whom they were issued was omitted from the bonds. Prior to the issue of the bonds in question, the town had issued registered bonds to the amount of $457,000, with the payee's name in blank, and the validity of such bonds has not been questioned by the town, whatever importance may be attached to that fact. Although the bonds were not registered, as will later appear, the town is estopped to affirm that fact, and the purchaser could justly indulge the presumption that Coffin & Stanton were authorized to insert their name in the blank. The proposition of the defendants is narrowed to this: that when bonds are offered as

collateral security, by reputable brokers in the city of New York, if they appear to be intended for registered bonds, and are certified to be registered, yet, if the first payee's name is not inserted in the bonds, the pledgee will be charged with bad faith in receiving the bonds, on account of such omission; that is, what would be at most a mere irregularity is converted into evidence that a condition precedent to the issuing of the bonds had not been met. If the blank gave the complainant notice of anything, of what defect should it have excited suspicion? That the bonds had not been duly issued to somebody? How could that be, when the bonds had in all other respects the appearance of having been marketed, as evidenced by certification of the town officers, and by their possession by a person not connected with the town? It may be that such blank would place upon the complainant the peril of the bonds having been issued to some other person than Coffin & Stanton. But the bonds were issued to Coffin & Stanton, and if the complainant had inquired of the town officers he would have learned that fact, and that fact was the only one involved in the inquiry which it is claimed he was bound to make. But why should a proposed purchaser, from the existence of the blank, be called upon to suspect that the payee, whose name was omitted, had not paid for the bonds, for that is the only possible defense to these bonds even in Coffin & Stanton's hands? An omission in the bonds is not cognate to such grounds of defense, and would not suggest itself to any person, however prudent.. The complainant was justified in believing (1) that there was a statute authorizing the issuing of negotiable bonds; (2) that all conditions precedent or acts of compliance with the statute had been met; (3) that the bonds had been duly issued to somebody, and accordingly registered. Thereupon he was justified in believing that the omission of the name of the purchaser from the town was a mere oversight, and such an irregularity as could be cured at any time by the presentation of the bonds to the town treasurer, by the persons to whom they were issued, or their transferees. As the complainant took the bonds as collateral security, he was not interested to have the bonds transferred upon the registry until default should have been made in payment of the debt thus secured, inasmuch as the principal was payable in 40 years, and he was not concerned for the interest, until default should have been made in the payment of his debt. Until such default, it was suitable, if the complainant so willed, to leave the registration in its then condition. It has been stated above that the complainant is not affected by the fact that the bonds were not registered. The complainant urges that such registration was not a condition precedent to the issue of the bonds, as in the case of Anthony v. Jasper Co., 101 U. S. 693, but was directory. First Nat. Bank of North Bennington v. Town of Arlington, 16 Blatchf. 57, Fed. Cas. No. 4,806. The registration was not a condition precedent to the issue of the bonds, but, of course, a bond issued as a "registered bond" should be registered. But the purchaser could infer the fact from the certificate of registration indorsed on the bond (Rock Creek Tp. v. Strong, 96 U. S. 271; Cairo v. Zane, 149 U. S. 122, 13 Sup. Ct. 803), for the statute provides that "a certificate showing the registration of the bond shall be indorsed thereon." The bonds bear this indorsement: "This bond is registered in town treasurer's office, Gravesend." This indorsement is

a part of the bond. 4 Am. & Eng. Enc. Law (2d Ed.) pp. 139–142; Benedict v. Cowden, 49 N. Y. 396; Dinsmore v. Duncan, 57 N. Y. 573. It is true that the certificate is not signed by the town treasurer, but the bonds are signed by the supervisor, town clerk, and town treasurer, in whom the statute vested the power to select the place of registration, and each bond has this recital on its face: "This bond is issued under and in pursuance of an act of the legislature of the state of New York entitled 'An act in relation to local improvements in the town of Gravesend, in the county of Kings,' passed on the 10th day of March, 1892." Such recital is sufficient in form (School Dist. v. Stone, 106 U. S. 183, 187, 1 Sup. Ct. 84), and, in connection with the certificate of registration, sufficiently represented to the complainant that it was a registered bond, and thereby estops the town from asserting the nonregistration.

From these views it results that the complainant is a bona fide purchaser, for the surrender of the bonds held first by him as collateral security, and the substitution of the bonds in suit, furnished a good consideration (Goodman v. Simonds, 20 How. 343); and, moreover, the transfer of negotiable paper before maturity to a creditor, merely as security for an antecedent debt, makes the taker thereof a bona fide holder (Brooklyn City & N. R. Co. v. National Bank of New York, 102 U. S. 14; File Co. v. Garrett, 110 U. S. 288, 4 Sup. Ct. 90). It is considered that the complainant is entitled to a decree protecting his holding of the bonds to the extent of the debt and interest for which they were pledged as security. Such decree will be settled by the court in the usual manner. However, it seems equitable that the bonds should be surrendered to the town, and canceled, at its option, upon the payment by it of the debt, for the securing of which the bonds were pledged by Coffin & Stanton, unless some objection not appearing in the record exists thereto. Such question is reserved until the presentation of the decree. The complainant should have costs.